UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MICROSOFT CORPORATION**,<br>Plaintiff,<br>v.<br>**A&S ELECTRONICS, INC.**, *ET AL.*,<br>Defendants. | Case No. 15-cv-03570-YGR<br><br>**NOTICE OF TENTATIVE RULING RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 26 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING TENTATIVE RULING FOR THE HEARING SCHEDULED ON **DECEMBER 15, 2015, AT 2:00 P.M.:**

The Court has reviewed the parties' papers, and is tentatively inclined to order that the Motion to Dismiss the First Amended Complaint is granted with leave to amend, for the reasons stated more fully below.

This is a ***tentative*** ruling and the parties still have an opportunity to present oral argument. Alternatively, if the parties JOINTLY stipulate in writing to entry of the tentative ruling, the hearing will be taken off calendar, and the tentative ruling will become the order of the Court.

Such stipulation must be filed no later than **5:00 p.m.** on **Monday, December 14, 2015**. Otherwise, the hearing will take place as scheduled. The parties should be prepared to address the issues as stated in the tentative ruling at the hearing. If the parties intend to rely on authorities not cited in their briefs, they must notify the Court and opposing counsel of these authorities reasonably in advance of the hearing by filing a statement of supplemental authorities, with pinpoint cites, and without argument or additional briefing. *Cf.* Civil L. R. 7-3(d). The parties will be given the opportunity at oral argument to explain their reliance on such authority.

**TENTATIVE RULING**

Plaintiff Microsoft Corporation ("Microsoft") brings this copyright and trademark case against Defendants Alan Lin and A&S Electronics, Inc. (collectively, "A&S"), which resells "used" Microsoft software online without Microsoft's authorization. Microsoft filed its original complaint on August 3, 2015. Subsequently, in response to a motion to dismiss filed by A&S, Microsoft filed its First Amended Complaint on October 20, 2015 (Dkt. No. 23, "FAC.")

In the FAC, Microsoft asserts six causes of action against A&S: (1) contributory copyright infringement (17 U.S.C. §§ 501, *et seq.*); (2) trademark infringement (15 U.S.C. § 1114); (3) false designation of origin and false description and representation of Microsoft packaging (15 U.S.C. §§ 1125 *et seq.*); (4) unfair competition and false advertising (15 U.S.C. § 1125(a)); (5) imposition of a constructive trust; and (6) an accounting. (FAC ¶¶ 1, 31-74.)

A&S has filed a Motion to Dismiss the FAC in its entirety on the grounds that Microsoft has failed to state a claim.

**I.   BACKGROUND**

Microsoft brings the instant action to enjoin A&S's alleged conduct in selling "product activation keys," in combination with distributable media, such as DVDs, containing Microsoft software or instructions for downloading software from Microsoft's website. A&S uses trademarked terms like "Microsoft Office" to advertise the used software on its website, as well as the physical items which display Microsoft's trademarks. Microsoft specifically alleges infringement of two copyrighted works: (1) Microsoft Office 2013, and (2) Microsoft Office Professional Plus 2010. (FAC ¶¶ 13-14.) Microsoft further alleges infringement of five trademarks related to Microsoft Office: "Microsoft" (twice for two different trademarks); "Microsoft Office"; "Office 2010" design; and "Office 2012" design. (*Id.* ¶ 15.) Microsoft alleges that its investigators were able to purchase two copies of Microsoft Office, one on eBay offered by Alan Lin, and one on defendants' website "TRUSTprice.com." (*Id.* ¶¶ 20-30.) The eBay purchase is alleged to be a combination of a product activation key number on a printed card and an "Office Professional Plus 2013 Backup DVD…both traced to a Home Use Program ('HUP') under which software is licensed only for the use of enterprise customers' employees and

is nontransferable." (*Id.* ¶ 22.) The website purchase is alleged as "a counterfeit Microsoft Office Professional 2010 Product Key Card with an illicitly distributed product key, together with instructions to download the Microsoft Office software directly from Microsoft or use the customers' own matching media." (*Id.* ¶ 24.)

The false designation of origin, unfair competition, and false advertising claims under the Lanham Act derive from the same alleged conduct as the copyright and trademark claims. The fifth and sixth causes of action seek imposition of a constructive trust, and demand that A&S provide an accounting of all of the money earned from A&S's alleged infringing sales of Microsoft software. (*Id.* ¶¶ 69-74.)

A&S argues that its conduct is lawful and that Microsoft is attempting to prevent people who lawfully obtain and own copies of software from reselling those copies without first obtaining Microsoft's consent. A&S argues that, under the Supreme Court's ruling in *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. __, 133 S. Ct. 1352 (2013), importation and sale of lawfully obtained copies of Microsoft's copyrighted works is subject to the "first sale" doctrine, 17 U.S.C. § 109(a). That doctrine permits the owner of a particular copy of a copyrighted work to sell that copy without the authority or permission of the copyright owner. *Id.* Consequently, A&S argues, the Court should dismiss Microsoft's copyright claim and all claims derived from it.

## II. APPLICABLE STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

**III.    DISCUSSION**

    **A.    Contributory Copyright Infringement**

Microsoft alleges that A&S is liable for contributory infringement, a type of secondary infringement. "To establish secondary infringement, [a claimant] must first demonstrate direct infringement" by another. *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 937 (9th Cir. 2010), *as amended on denial of reh'g* (Feb. 17, 2011), *opinion amended and superseded on denial of reh'g,* No. 09-15932, 2011 WL 538748 (9th Cir. Feb. 17, 2011). In order to establish direct infringement under 17 U.S.C. section 501(a), a claimant must allege facts to establish: (1) ownership of the allegedly infringed material; and (2) the alleged direct infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. section 106. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Liability for contributory infringement may then be established by allegations that the contributor infringer knows of the third party's direct infringing activity and has "intentionally induc[ed] or encourag[ed] [the] direct infringement." *Id.* at 937-38 (quoting *MGM Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 930 (2005)).

The federal Copyright Act protects "original works of authorship," including software programs. 17 U.S.C. §§ 101-103. With respect to these works, the Copyright Act confers certain exclusive rights on copyright owners, including exclusive rights to reproduce the works and to distribute the works by sale or rental. *Id.* § 106(1), (3). Actions in violation of those rights constitute infringement. However, the Copyright Act contains limitations on those rights. For instance, the exclusive distribution right is limited by the "first sale" doctrine, which allows owners of particular copies of copyrighted works to resell those copies. 17 U.S.C. § 109(a).[1] And, in the context of computer software, the exclusive reproduction right is limited by the "essential step" defense, which allows the owner of a copyrighted software program to make a

---

[1] Section 109(a) of the Copyright Act provides that:
> Notwithstanding the provisions of section 106(3), the owner of a particular copy…lawfully made under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy….

17 U.S.C. § 109(a).

4

1  copy of the computer program as an "essential step" in the utilization of the program, generally
2  when installing (a copy of) the program onto the computer's hard-drive memory.  17 U.S.C. §
3  117(a)(1).[2]  However, these limitations only apply when the particular copies of the copyrighted
4  works at issue are owned rather than merely licensed for use.  *Vernor,* 621 F.3d at 1107.  A true
5  licensee cannot resell the software under the "first sale" doctrine or assert the "essential step"
6  defense to claim of unlawful reproduction.

7  To determine whether a software user is a licensee or an owner, the Ninth Circuit looks to
8  three factors: whether the "copyright owner (1) specifies that the user is granted a license; (2)
9  significantly restricts the user's ability to transfer the software; and (3) imposes notable use
10 restrictions."  *Vernor*, 621 F.3d at 1111.  In *Vernor*, the question before the Ninth Circuit was
11 whether the party that sold copies of software to Vernor was: (*i*) the owner of that software, such
12 that "both its sales to Vernor and Vernor's subsequent sales were non-infringing under the first
13 sale doctrine;" or (*ii*) a licensee permitted to use the software, so that the selling party's sale, and
14 Vernor's subsequent sales, were "not protected by the first sale doctrine and would therefore
15 infringe [the copyright owner's] exclusive distribution right."  *Vernor,* 621 F.3d at 1107.  The
16 Ninth Circuit concluded that the software user who had sold to Vernor was a licensee, not an
17 owner, based upon evidence that it retained title to the software and imposed significant transfer
18 and use restrictions.  *Id.* at 1111-12.  As a consequence, the first sale doctrine did not apply, and
19 the sales to Vernor and subsequent purchasers infringed the copyright owner's reproduction and
20 distribution rights.  *Id.* at 1112.  Importantly, the Ninth Circuit in *Vernor* did not hold that all
21 software customers were mere licensees, but instead held that "a software customer bound by a
22 restrictive license agreement may be a licensee of a copy not entitled to the first sale doctrine or

---

[2] Section 117 of the Copyright Act provides, in part:
(a) Making of additional copy or adaptation by owner of copy.-- Notwithstanding the provisions of section 106, it is not an infringement for the owner of a copy of a computer program to make or authorize the making of another copy or adaptation of that computer program provided:
(1) that such a new copy or adaptation is created as an essential step in the utilization of the computer program in conjunction with a machine and that it is used in no other manner….
17 U.S.C. § 117(a)(1).

1  the essential step defense." *Vernor*, 621 F.3d at 1113.

2  Subsequent Ninth Circuit authority has confirmed that "the mere labeling of an
3  arrangement as a license rather than a sale, although it [is] a factor to be considered, [is] not by
4  itself dispositive of the issue." *UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1180 (9th Cir.
5  2011).  In *UMG*, the Ninth Circuit held that, despite a statement printed on the audio CDs
6  purporting to maintain ownership of the property by the recording company and to limit use,
7  resale, or transfer of possession, "under all the circumstances of the CDs' distribution, the
8  recipients were entitled to use or dispose of them in any manner they saw fit, and UMG did not
9  enter a license agreement for the CDs with the recipients."  *UMG*, 628 F.3d at 1180.[3]  In *UMG*, the
10 court considered significant the facts that the CDs were sent to recipients without any prior
11 arrangement, without any meaningful way to track or control their use, and without any
12 confirmation of an agreement to enter into a license, all of which indicated a transfer of title rather
13 than a licensing agreement.  *Id*. at 1182-83.

14 Microsoft argues that it has sufficiently alleged the direct infringement here, referencing
15 paragraph 32 of the FAC which alleges:

> Defendants have contributed to the infringement of Microsoft's copyrights by distributing counterfeit Microsoft product key cards and labels in the United States of America without approval or authorization from Microsoft to end users who were not licensed to use the software associated with the product keys printed on the counterfeit cards and labels.

(FAC ¶ 32.)  Microsoft submits that this allegation suffices to state the basis for the direct
infringement by A&S customers.  Though contending that this allegation is sufficient, Microsoft
offers to amend the FAC to add that these end users "directly infringed Microsoft's copyrights by
using the product keys to copy unauthorized Microsoft software."  (Oppo. at 12:22-23.)

---

[3] Some of the CDs at issue included a statement reading:
This CD is the property of the record company and is licensed to the intended recipient for personal use only. Acceptance of this CD shall constitute an agreement to comply with the terms of the license. Resale or transfer of possession is not allowed and may be punishable under federal and state laws.
*UMG*, 628 F.3d at 1177-78.

6

On the direct infringement elements, Microsoft argues that it owns the copyrights for Microsoft Office 2010 and Office 2013, the software at issue here, acquired by A&S customers. Thus, it contends that A&S customers violate Microsoft's exclusive rights under section 106 to reproduce copies of its software programs. *See* 17 U.S.C. § 106(1). End users necessarily reproduce "copies" of software by installing it on their computers using the product activation keys obtained from A&S. *See MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 517-18 (9th Cir.1993) (installing software is making a "copy" under Copyright Act's definition in 17 U.S.C. § 101); *see also Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir.) *cert. dismissed,* 134 S. Ct. 624 (2013) ("uploading and downloading copyrighted material are infringing acts…[; t]he former violates the copyright holder's right to distribution, the latter the right to reproduction").

Microsoft's argument fails to address the question of whether the parties *originally* in possession of the software, *before* A&S sold a DVD copy or a product activation key associated with it, acquired that software as owners or as licensees. The distinction is significant and the need for clarify in the FAC compelling: if the parties originally in possession of the software held that software as owners, A&S could lawfully sell copies of Microsoft's software to its customers, and those customers could lawfully reproduce copies of the software by installing it onto their computers. While "this distinction between sales and licenses [ ] has caused the use of software licensing agreements to flourish and become the preferred form of software transactions," (*Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1156 (9th Cir. 2011)), the existence of a licensing agreement still requires pleading and proof of facts to establish it. Again, merely labeling the arrangement as a license rather than a sale is not sufficient. *UMG Recordings*, 628 F.3d at 1180; *cf. MDY Industries*, 629 F.3d at 938-39 (license found where copyright owner's agreement with users: reserved title to the company; granted users a non-exclusive, limited license; allowed transfer only to a recipient who accepted licensing agreement's terms and received all original packaging and documentation; permanently deletion of all copies and installations; use restrictions; and the ability to terminate the software remotely if the user violated the terms of the agreement). Moreover, while violation of certain terms of a license agreement can give rise to a copyright

infringement claim, violation of other license terms is actionable only as a breach of contract. *See MDY Industries*, 629 F.3d at 939 (a copyright owner who grants license ordinarily waives the right to sue for copyright infringement except when the licensee acts "outside the scope of" the license; mere violation of other "covenants" in the license agreement is actionable only under contract law); *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 155 (1975) (an unlicensed use of a copyrighted work is not an infringement unless it conflicts with one of the specific exclusive rights conferred by the copyright statute).[4]  Thus, the details of any purported licensing arrangement, and the facts indicating that the software user was a licensee rather than an owner, are necessary to set forth a plausible allegation of direct infringement.

A&S argues that the FAC do not allege an act of primary direct infringement by anyone, and therefore a claim for contributory infringement cannot be supported. Turning to the allegations of the FAC itself, Microsoft alleges that it "sells licenses to use its software, not the software itself… no title to Microsoft Office itself passes to any individual when he or she purchases a license and DVD containing the Microsoft Office software code."  (FAC ¶ 22.)  Microsoft further alleges that its licensing agreements "make clear to the end users that they have only purchased a license for use…[and] contain limitations around the use of the software and place certain restrictions on any transfer of the license and accompanying materials (e.g. backup discs)."  (FAC ¶ 12.)  As to the two specific sales identified in the FAC, Microsoft alleges one purchase was a product key and a backup DVD with the words "Not for resale" printed on the front, both of which were traced to a "Home Use Program" that licensed a non-transferable use only by enterprise customers' employees.  The other alleged purchase was a product key only, with instructions for downloading Microsoft Office software directly from Microsoft or for use with the customers' own matching media. (FAC ¶ 22.)  Microsoft alleges that the latter purchase was traced to "a

---

[4] Not every breach of a license agreement constitutes copyright infringement. "To recover for copyright infringement based on breach of a license agreement, (1) the copying must exceed the scope of the defendant's license and (2) the copyright owner's complaint must be grounded in an exclusive right of copyright (e.g., unlawful reproduction or distribution)." *MDY Industries*, 629 F.3d at 940.

1  product key originally distributed through a program in China for academic users under which the
2  software and associated products keys are nontransferable." (FAC ¶ 26.)
3      The Court agrees that these allegations are insufficient to state the basis for direct
4  infringement. In order to allege an act of direct infringement that would not fall within the "first
5  sale" and "essential step" exceptions to the Copyright Act, Microsoft must allege facts supporting
6  the three *Vernor* factors: (1) specification that the user is granted a license; (2) "significant"
7  restrictions on the ability to transfer the software; and (3) "notable use restrictions." *Vernor,* 621
8  F.3d at 1110. Microsoft's allegations here are, at best, vague and conclusory on these points. The
9  FAC does not specify the terms and conditions that applied to software acquired under the two
10 particular programs to which the purchases here were traced.
11     The Court acknowledges the requirements of pleading under Rule 8, however, without a
12 clear allegations on direct infringement, Microsoft has failed to state its claim for contributory
13 trademark infringement. Therefore, Court **GRANTS** the Motion to Dismiss the first claim for relief
14 **WITH LEAVE TO AMEND**.
15     **B.**    **All Other Claims**
16     A&S also moves to dismiss Microsoft's claims for trademark infringement, false
17 designation or origin, and false advertising under the Lanham Act, as well as the derivative claims
18 for imposition of a constructive trust and an accounting. Primarily, A&S argues that Microsoft
19 cannot use the Lanham Act to extend the reach of rights that are actually based on copyright, but
20 otherwise excluded by the Copyright Act, citing *Dastar Corp v. Twentieth Century Fox Film*
21 *Corp.*, 539 U.S. 23 (2003). In addition, A&S argues that all the trademark claims fail under the
22 "nominative fair use" doctrine. *See New Kids on the Block v. News Am. Publishing, Inc.,* 971 F.2d
23 302, 308 (9th Cir. 1992) (nominative fair use determined by whether: (1) the product "readily
24 identifiable without use of the trademark," (2) the defendant used more of the mark than is
25 "reasonably necessary" to identify the product, and (3) the defendant falsely suggested
26 sponsorship or endorsement by the trademark holder.)
27     Leaving aside the merits of these arguments, which the Court does not reach, the Court's
28 reading of the FAC indicates that all of Microsoft's Lanham Act claims are based upon the

1  premise that A&S sells "infringing" products, and that representations and designations thereon
2  are false because customers would be led to believe that the products are genuine, authentic
3  Microsoft products that they are entitled to use.  Because the viability of these claims as alleged
4  depend, at least in part, upon the sufficiency of the copyright infringement claim, the Court
5  **GRANTS** the Motion to Dismiss the remainder of the claims **WITH LEAVE TO AMEND**.

6  **IV.     CONCLUSION**

7  Based upon the foregoing, the Court is inclined to grant the motion to dismiss with leave to
8  amend.  In amending the complaint, Microsoft is directed state its claims without superfluous
9  allegations of "the global problem of software piracy" and "defendants' past infringing conduct,"
10 neither of which has any bearing on the merits of the claims herein or would need to be proven at
11 trial.

12 Dated: December 11, 2015

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**